# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | MDL No. 1354 (NG) |
| ) | **Civil Action No. 00-cv-11912-NG** |
| **CITIGROUP, INC.** ) | **(LEAD DOCKET NO.)** |
| **CAPITAL ACCUMULATION** ) | |
| **PLAN LITIGATION,** ) | Barber v. Citigroup Global Markets Inc., |
| ) | 07CV10677 (ORIGINAL DOCKET NO.) |
| ) | E.D. Mich. No. 07-CV-10606 |
| **JOHNIE F. WEEMS, III**, on behalf of ) | |
| of himself and others similarly situated, ) | |
| Plaintiff, ) | Hundt v. Citigroup Global Markets Inc., |
| ) | 06CV12095 (ORIGINAL DOCKET NO.) |
| ) | D. Neb. No. 06-CV-03248 |
| v. ) | |
| ) | |
| **CITIGROUP INC., TRAVELERS** ) | |
| **GROUP, INC., SALOMON SMITH** ) | |
| **BARNEY HOLDINGS., SALOMON,** ) | |
| **SMITH BARNEY INC., AND** ) | |
| **PRIMERICA FINANCIAL SERVICES,** ) | |
| **INC.,** ) | |
| Defendants. ) | |

GERTNER, D.J.:

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

March 31, 2011

Michigan class representative Barry Barber ("Barber") and Nebraska class representatives Craig Hundt ("Hundt"), Brett Neal ("Neal"), and Judd Norman ("Norman") brought these actions to challenge Citigroup, Inc.'s[1] Capital Accumulation Plan ("CAP" or "the Plan"). The Plan allows certain employees to choose to receive part of their compensation in Citigroup stock. While Citigroup issues the stock at a discount, it does not fully vest until two years after issuance. CAP requires participating employees to forfeit unvested shares -- and

---

[1] The defendants in these cases are Citigroup, Inc.; Citigroup Global Markets, Inc.; Salomon Smith Barney Inc.; Salomon Smith Barney Holdings, Inc.; Primerica Financial Services, Inc.; Travelers Group, Inc.; and Citifinancial, Inc. For clarity, they will be collectively referred to as "Citigroup" or "the defendants."

whatever wages they would have received instead of those shares -- if they voluntarily leave the company before the two-year period has passed. The plaintiffs are stockbrokers who participated in CAP while they were employed by Citigroup. Each subsequently left Citigroup voluntarily and, in accordance with the terms of CAP, forfeited some of the stock purchased at a discount on their behalf. They allege that the Plan is against public policy and bring claims of breach of contract, conversion, and unjust enrichment. Hundt v. Citigroup Global Markets Inc., Compl. ¶¶ 10-34 (document #773-2) [hereinafter Neb. Compl.]; Barber v. Citigroup Global Markets, Inc., Compl. ¶¶ 15-39 (document #773-7) [hereinafter Mich. Compl.].

The defendants counterclaimed on the grounds that if indeed the Plan is invalid, then the plaintiffs should repay the amounts that they actually received under the plan -- in each class an amount that exceeded the monies forfeited. Hundt v. Citigroup Global Markets, Inc., Answer at 6-7 (document #8 in D. Neb. 06-cv-03248); Barber v. Citigroup Global Markets Inc., Answer at 7-8 (document #680).[2]

These cases are part of a larger set of challenges to the Plan. Multidistrict Litigation Order No. 1354 consolidated them along with other member cases for pretrial proceedings in this Court. See 28 U.S.C. § 1407. Hundt, Norman, and Neal filed their lawsuit in the District of Nebraska on October 18, 2006, and the Panel transferred the case on November 7, 2006. Hundt v. Citigroup Global Markets Inc., No. 06-cv-03248 (D. Neb.). Barber filed his case in the

---

[2] For each of the named plaintiffs in this case, the value of the vested stock they received over the course of their participation in CAP substantially exceeded the total amount of cash compensation that they elected to forgo to participate. Barber received stock worth more than $2.3 million at vesting in lieu of compensation worth $1.6 million in cash (including the $340,000 forfeited at the end of his employment). Hundt received $230,000 worth of vested stock in lieu of $155,000 in cash compensation (including $52,000 forfeited). Neal received more than $36,000 in vested stock in lieu of $30,000 cash compensation (including $4,000 forfeited). And finally, Norman received $200,000 in vested stock in lieu of $155,000 cash compensation (including $28,000 forfeited). Def's. Statement of Facts ¶ 14 (document #788).

Eastern District of Michigan on February 9, 2007, and the Panel transferred the case on March 19, 2007. Barber v. Citigroup Global Markets Inc., No. 07-cv-10606 (E.D. Mich.). On January 6, 2010, this Court certified Michigan and Nebraska classes consisting of individuals who participated in the version of CAP offered to financial advisors, the CAP Financial Consultant Program. See Order on Cross Mots. for Summ. J. & Mots. for Class Certification, Jan. 6, 2010 (document #775) [hereinafter Renaudin Order]. The defendants moved for summary judgment against the Michigan and Nebraska classes (document #786), and in response, these plaintiffs filed a cross-motion for summary judgment (document #791).

This Court has already rejected five other challenges to CAP: the first lawsuit by a class of Florida plaintiffs, Slutzky v. Smith Barney, Inc., the second by a former Citigroup employee in Georgia, Gilmore v. Smith Barney, Inc., the third by a class of Texas plaintiffs, Mewhinney v. Citigroup, Inc., the fourth by a class of Colorado plaintiffs, Rodemer v. Smith Barney, Inc., and the fifth by a class of Louisiana plaintiffs, Renaudin v. Smith Barney, Inc. See Final Judgment, Gilmore v. Smith Barney, Inc. (entered July 25, 2006) (document #616); Final Judgment, Slutzky v. Smith Barney, Inc. (entered Nov. 28, 2006) (document #650); Final Judgment, Mewhinney v. Citigroup (entered Aug. 8, 2008) (document #717); Final Judgment, Rodemer v. Smith Barney, Inc. and Renaudin v. Smith Barney, Inc. (entered Jan. 6, 2010) (document #776). The First Circuit affirmed the first two final judgments, and the Texas plaintiffs did not appeal. See In re Citigroup, Inc. Capital Accumulation Plan Litig., 535 F.3d 45, 63 (1st Cir. 2008) (document #714) (hereinafter In re Citigroup).

Various related cases have been dismissed by stipulation. See Stipulation of Dismissal (entered Nov. 21, 2008) (document #734) (dismissing with prejudice cases involving Arizona,

Mississippi, Montana, and North Carolina plaintiffs); Stipulation of Dismissal (entered Mar. 17, 2009) (document #751) (dismissing with prejudice a case involving a Maryland plaintiff, Andrews v. Citigroup Global Markets Inc.). After the Connecticut Supreme Court and the Massachusetts Supreme Judicial Court answered certified questions regarding Lomas v. Citigroup, Inc. (a Connecticut class) and Peckler v. Citigroup, Inc. (a Massachusetts class), this Court dismissed those cases as well. See Weems v. Citigroup, Inc., 900 N.E.2d 89 (Mass. 2009) (document #745); Weems v. Citigroup Inc., 961 A.2d 349 (Conn. 2008) (document #739-2); Order of Dismissal (entered May 21, 2009) (document #763).

These cases have proceeded piecemeal because each state has slightly different standards, but whatever the differences, the result has been the same. The plaintiffs' challenges to CAP have universally been dismissed. And, after all of this litigation, there is little left to litigate. The contract documents are the same and the precedent governing the Court's interpretation is only stronger. In my last opinion on summary judgment in Rodemer and Renaudin, I revisited the First Circuit's decision in In re Citigroup and my decision in Mewhinney and found few differences between Florida, Georgia, and Texas law, on the one hand, and Colorado and Louisiana law on the other. Renaudin Order at 3. Here, in the Michigan and Nebraska cases, the plaintiffs bring only common law claims and no state statutory claims.[3] And once again I find

---

[3] Plaintiffs' opposition refers to "statutory claim[s]" in both Michigan and Nebraska. The Michigan claim is apparently based on the Michigan Wages and Fringe Benefits Act, Mich. Comp. Laws § 408.471 et seq., and the Nebraska claim is purportedly under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. However, the plaintiffs' complaints include only common law claims, without any statutory claims. See Hundt v.Citigroup Global Markets Inc., Compl. ¶¶ 10-34 (document #773-2); Barber v. Citigroup Global Markets Inc., Compl. ¶¶ 15-39 (document #773-7). The Court may reject new claims that are not part of a complaint and are instead added for the first time in an opposition to summary judgment or a memorandum in support of a motion for summary judgment. See, e.g., Hills v. Wal-Mart Stores, Inc., No. 08-23197, 2010 WL 1839268, at *8 n.26 (S.D. Fla. May 6, 2010); Coppola v. Conn. Student Loan Found., Civ. A. N-87-398(JAC), 1989 WL 47419, at *3 n.14 (D. Conn. Mar. 22, 1989). It is notable that the Michigan plaintiffs filed their case in February of 2007 and the Nebraska plaintiffs brought their lawsuit in October of 2006. They have had ample time to move to amend their complaints and have not done so. (Plaintiffs did refer to these statutes in a status report to the court on December 8, 2008, as if

that Michigan and Nebraska law does not sufficiently differ so as to alter the conclusions reached under Florida, Georgia, Texas, Colorado and Louisiana law.

Therefore, the Court **GRANTS** defendants' motion for summary judgment (document #786) and **DENIES** plaintiffs' motion for summary judgment (document #791).

## I. FACTUAL BACKGROUND

The details of the CAP Plan have been described at length by this Court as well by as the First Circuit. See Order on Cross Mots. for Summ. J., at 4-10, Aug. 8, 2008 (document #716) (hereinafter Mewhinney Order); Renaudin Order at 4-9; In re Citigroup, 535 F.3d at 48-50. And the participation of these particular named plaintiffs has also been described. Renaudin Order at 8. Those facts are incorporated here by reference.

## II. STANDARD OF REVIEW

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All facts must be considered in the light most favorable to the non-moving party. Fed. R. Civ. P. 56©; Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008). The summary judgment standard is the same when the parties have filed cross-motions for summary judgment. Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).

---

they were part of the lawsuit. See Status Report at 4-5 (document #735).) However, they were again put on notice that they had only common law claims when the court listed the pending claims in the class certification opinion. See Renaudin Order at 11. Again, plaintiffs did not move to amend their complaints. I now find that the statutory claims are waived. Coppola, 1989 WL 47419, at *3 n.14 ("[A] memorandum in support of a motion for summary judgment is not the proper place to present new claims which, in effect, amend the complaint.").

As a general rule, the interpretation of an unambiguous contract is a matter of law. See John Hancock Life Ins. Co. v. Abbott Labs., 478 F.3d 1, 6-7 (1st Cir. 2006). Where a contract is ambiguous, however, its interpretation is appropriate for a fact-finder. Den Norske Bank AS v. First Nat'l. Bank of Boston, 75 F.3d 49, 52-53 (1st Cir. 1996). Likewise, where those facts are contested, they may preclude summary judgment.

## III. ANALYSIS

Here, the Michigan and Nebraska classes bring the same four claims: (I) breach of an employment contract; (ii) breach of the CAP contract; (iii) conversion; and (iv) unjust enrichment. I will consider each in turn. As each of these issues has already been discussed at length in previous cases, I rely heavily on those decisions in In re Citigroup, Mewhinney and Renaudin.

### A. Breach of an Employment Contract (Count I)

The plaintiffs allege that Citigroup breached an employment contract in which the defendants agreed to pay earned compensation based on a fixed annual salary, commissions, or other compensation agreements. Mich. Compl. ¶¶ 12-17; Neb. Compl. ¶¶ 17-22. The plaintiffs argue that although there is no express employment contract between the parties, the combination of a Commission Grid and a written employment manual constitute a contract between the stock brokers and Citigroup. And further, Citigroup orally agreed to pay the stockbrokers earned commissions and breached that oral agreement by failing to return the plaintiffs' wages withheld for unvested stock when they left their employment.

This Court and the First Circuit have already rejected these arguments. The plaintiffs' allegations of an oral agreement to pay all commissions are unconvincing. A plaintiff must

provide evidence as to an alleged contract, such as who entered into the agreement, its terms, or when it was made. See Rahman El v. First Franklin Fin. Corp., 2009 WL 3876506, at *6 (E.D. Mich. Nov. 17, 2009) (granting summary judgment for defendants on breach of contract claim because the complaint did not "identify the alleged contract at issue, the terms of any contract, or how exactly any of defendants breached it"). See also Renaudin Order at 34 ("[P]laintiffs have not provided the date a contract was made, its terms, or individuals who entered the agreement. When a party has not provided information regarding such basic elements of a contract, summary judgment is appropriate."). In this case as in the others, the Michigan and Nebraska plaintiffs have provided no details as to who made the alleged commission statements, when, or to whom. And where there is no specific oral agreement, I cannot determine whether it was breached.

Even assuming for the sake of argument that an employment contract existed between the parties -- written or oral -- the CAP election would have modified any prior contract. See In re Citigroup, 535 F.3d at 57 (finding that the election to participate in the CAP Program functioned as a "formal modification" of any prior contract) (applying Florida law); Renaudin Order at 35 (applying Colorado and Louisiana law). Michigan and Nebraska law are no different. Parties may generally modify a contract by mutual assent and consideration.[4] Grand Island Prod. Credit Assn. v. Humphrey, 338 N.W.2d 807, 810-11 (Neb. 1986); Adell Broad., 708 N.W.2d at 782. Mutual assent will be found where there is a written agreement that establishes a mutual agreement to waive the terms of the original contract. Id.

---

[4] In Michigan, consideration is not required to amend a contract so long as the modification is in writing and signed by the party to be charged. Mich. Comp. Laws § 566.1; Adell Broad. v. Apex Media Sales, 708 N.W.2d 778, 782 (Mich. Ct. App. 2005) ("The fact that parties consider it to their advantage to modify their agreement is sufficient consideration.").

This Court has already articulated that "The [CAP] documents themselves . . . demonstrate mutual consent to modify any prior contract." Renaudin Order at 36. And there is no question that these particular plaintiffs voluntarily elected to participate. They each signed an election form that clearly disclosed the potential forfeiture of funds. For example, Michigan class representative Barber signed an election form that states:

> I further understand, and expressly agree, that if I leave the Company voluntarily or am terminated for gross misconduct prior to expiration of the restricted period my CAP Share award will be cancelled, and I will have no right to receive the cash compensation that otherwise would have been paid to me if I had not elected to participate in FC CAP.

Def's. Statement of Facts ¶ 7; Decl. of Sheri Meyer-Hanover, Ex. A (document #790). The language is clear and unequivocal; there is no evidence that the plaintiff was coerced to sign it. See Practice & Procedure Order 20, at 9 (document #506) (holding that signatures on the election form and restricted stock award show no material issue of disputed fact as to assent). The benefits of the Plan, as the Court has explained, were substantial. Indeed, I found that "CAP's benefits -- such as its discount on stock price and tax benefits from income deferral -- are sufficient to constitute consideration." Renaudin Order at 36 (internal quotation omitted). See also In re Citigroup, 535 F.3d at 57. The named plaintiffs here benefitted substantially from CAP. See supra n.2 (comparing the amounts earned and the amounts forfeited). Here again, I find both mutual consent and consideration to conclude that any prior contract, assuming one had existed, had been appropriately modified.

Finally, the plaintiffs raise a new argument under Michigan law to support their claim for the breach of an employment contract. They suggest that Michigan's Sales Representatives Commissions Act ("SRCA") embodies a public policy against the type of forfeiture provisions at

issue here. To the extent that the Plan modified the terms of any previous employment agreement, the modification is invalid as a violation of Michigan public policy.

The SRCA provides, "[a]ll commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due." Mich. Comp. Laws § 600.2961(4). I am not convinced, however, that the SRCA applies to stocks. One Michigan court has held that the act applies only to commission for sales of "products" and "goods," not intangible items including life insurance. Klapp v. United Ins. Grp. Agency, Inc., 674 N.W.2d 736, 737-40 (Mich. Ct. App. 2003). Stock is more akin to life insurance than to the tangible items covered by the SRCA.

In any event, to the extent that the SRCA reflects a policy of requiring the payment of commissions that are due, that policy was not violated in this case. CAP participants elected to receive a portion of their future compensation in the form of restricted stock. Unvested stock was not "due at the time of termination." Mich. Comp. Laws § 600.2961(4). Plaintiffs cite Hill v. IKON Office Solutions, Inc., where the court concluded that the SRCA prevented the enforcement of a provision in a company manual that an employee forfeited earned commissions if she was fired before she was paid. 2006 WL 3524069, at *9-10 (Mich. Ct. App. Dec. 7, 2006). Unlike Hill, here the stockbrokers prospectively chose to receive restricted stock in return for the ability to defer taxes and receive the stock at a discount. They were not being "force[d] . . . to waive" their statutory rights. Id. at *10. Moreover, the plaintiffs here left their employment voluntarily, whereas the plaintiff in Hill was fired. Id. at *9-10. The Hill court emphasized that

enforcing the provision of the manual would have allowed the company to fire a sales representative immediately before a large commission became due. Id. at *10. In the CAP plan, by contrast, the vesting provision did not apply to individuals who were dismissed without cause. CAP therefore did not violate the public policy of paying individuals those commissions that are due at the termination of their employment.

Accordingly, the Court must once again find that the defendants are entitled to summary judgment as a matter of law on the breach of employment contract claims.

### B. Breach of CAP Contract (Count II)

Like previous plaintiffs in related cases, Barber, Hundt, Neal, and Norman allege that the CAP Plan is invalid as a matter of public policy. As a general rule, a clear contract must be enforced as written unless a provision of the contract would violate the law or public policy. Rory v. Cont'l Ins. Co., 703 N.W.2d 23, 31 (Mich. 2005); City of Scottsbluff v. Emp'rs. Mut. Ins. Co., 658 N.W.2d 704, 708 (Neb. 2003). This Court and others have already determined that the CAP Plan is clear, unambiguous, and enforceable. See In re Citigroup 535 F.3d at 55, 60 (finding that CAP documentation is "unambiguous regarding the scope of the forfeiture provision. Not only does a participant forfeit his restricted shares by voluntarily terminating his employment, but he also forfeits the monetary compensation foregone to receive those shares"); Renaudin Order at 39; Mewhinney Order at 39, 45; Milhollin v. Salomon Smith Barney, Inc., 612 S.E.2d 72, 76-77 (Ga. Ct. App. 2005); Rosen v. Smith Barney, Inc., 925 A.2d 32, 42 (N.J. Super. Ct. App. Div. 2007). Like the courts before me, I am bound to enforce the forfeiture provisions in the Plan in accordance with their plain terms -- unless I determine that they violate Michigan or Nebraska public policy.

Here, the plaintiffs make two arguments under Michigan and Nebraska law: (I) that public policy prohibits restrictive covenants; and (ii) that public policy promotes the payment of all earned income -- and therefore prohibits forfeiture provisions.

First, I note that the First Circuit already rejected plaintiffs' argument that the Plan acted as an illegal non-compete provision, and plaintiffs have cited no new authority here. See In re Citigroup, 535 F.3d at 58. The forfeiture is effective whenever a departing employee leaves the firm and is not contingent on the employee joining a competitor. The First Circuit reasoned that "CAP does not prevent a departing employee from securing gainful employment." Id. Indeed, the Plan is more of an incentive to remain with Citigroup than to "punish" those who leave to go to a different firm.

As to their second argument that forfeiture provisions in employment contracts violate public policy, the case law is unavailing in both states. Michigan courts enforce unambiguous forfeiture provisions in employment contracts. See Steele v. Cold Heading Co., 336 N.W.2d 1, 2 (Mich. Ct. App. 1983) (rejecting public policy challenge to employment contract provision allowing payment of bonus only when employee continues employment through end of fiscal year). And as I have said, this Court and the First Circuit have held that the CAP forfeiture provisions are unambiguous. In re Citigroup, 535 F.3d at 60; see also Renaudin Order at 39.

The two Michigan cases cited by the plaintiffs do not lead to a different conclusion. In Bilandzija v. Shilts, the Michigan Supreme Court invalidated a forfeiture provision in a land contract. 54 N.W.2d 705, 708 (Mich. 1952). The defendant contended that forfeiture should apply for failure to make required payments of principal and interest. Id. at 706. The Court refused to enforce the forfeiture because the contract was not "clear and unequivocal"; it did not

specify a due date or place for payments. Id. at 707-08. Here, the forfeiture provision is unambiguous. Federoff v. Ewing is similarly unavailing. In Federoff, the court voided a contractual provision that a reinsurer would not be liable for a worker's compensation claim if the insurer was insolvent because the provision was inconsistent with the worker's compensation scheme. 192 N.W.2d 242, 244-45 (Mich. 1971). Federoff does not directly deal with forfeiture, and I do not see how it could be read to invalidate an elective stock purchase plan.

Under Nebraska law, plaintiffs cite only one case to support their contention that the forfeiture provision violates Nebraska public policy. In Brockley v. Lozier Corp., the Nebraska Supreme Court invalidated a provision in an employment contract that called for forfeiture of deferred compensation if the employee joined a competing organization within five years after termination of employment. 488 N.W.2d 556, 563-64 (Neb. 1992). The Brockley court held that "forfeitures of deferred compensation are enforceable, but . . . they will be treated in the same manner as covenants not to compete, and therefore, the conditions making the forfeitures enforceable must be reasonable." Id. at 563. The court then determined that the forfeiture provision was unreasonable because of its duration. Id. at 563-64.

Plaintiffs claim that the forfeiture provision at issue here must similarly meet a "reasonableness" standard. The Brockley rule, however, applies to forfeiture provisions *related to restraints on trade*. See id. at 563 ("The concept of forfeiture of deferred compensation based on competitive employment after discharge has not been squarely before this court."); id. at 564 ("In considering the requirements for a partial restraint of trade . . . ."). As I have explained, the First Circuit has already rejected the notion that the forfeiture provision in CAP is effectively a non-competition agreement; the forfeiture provision made no distinction between working for a

competitor and leaving the business altogether. See In re Citigroup, 535 F.3d at 58. In any event, the forfeiture provision may well be reasonable because it allowed participants to elect to receive tax-deferred stock at a discount in exchange for the possibility of forfeiture. To a person, the named plaintiffs gained more through the Plan than any wages withheld, including those that they forfeited. See supra n.2.

Accordingly, as I find that the Plan was clear and unambiguous and did not violate the public policy of either Nebraska or Michigan, the forfeiture provisions of the Plan are enforceable according to their plain meaning. I grant summary judgment to the defendants on plaintiff's claims for breach of the CAP Agreement.

### C. Conversion (Count III)

Next, the plaintiffs claim that Citigroup is liable for conversion because it wrongfully took control of restricted stock that belonged to brokers when it enforced CAP's forfeiture provision. Conversion is "any distinct act of [domain or dominion] wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Allen v. Dealer Assistance, Inc., 299 N.W.2d 744, 747 (Neb. 1980); Wilcoxon v. Teicher, 2008 WL 4684154, at *5 (Mich. Ct. App. Oct. 23, 2008). Here again, the claims and the standards are virtually identical to those discussed in In re Citigroup. The First Circuit found that because the stockbrokers' "right to the restricted stock or its equivalent monetary amount was subject to the terms of the CAP agreement" in the first place, the forfeiture of those items was not inconsistent with their rights. In re Citigroup, 535 F.3d at 62.

Moreover, the enforcement of a valid contract does not constitute conversion under either Michigan or Nebraska law. See, e.g., Wilcoxon, 2008 WL 4684154, at *5 (affirming dismissal

of a conversion claim based on an attorney holding a retainer because the attorney worked sufficient hours to retain the full amount); Baye v. Airlite Plastics Co., 618 N.W.2d 145, 153 (Neb. 2000) (rejecting the possibility of damages in a conversion claim where stockholders had a right to possession under a stock option agreement). See also In re Citigroup, 535 F.3d at 59 ("The enforcement of a valid, unambiguous contract does not qualify as an unauthorized act.") (applying Florida law). In this case, when Citigroup enforced the forfeiture provisions of the Plan, it merely enforced what has already been determined to be a voluntary, clear and unambiguous contract. The forfeiture does not amount to conversion.

Because Citigroup enforced a valid contract, the plaintiffs' claims for conversion must be dismissed under both Nebraska and Michigan law and summary judgment granted for the defendants.

### D. Unjust Enrichment (Count IV)

The Michigan and Nebraska classes also asserted claims for unjust enrichment. In their opposition to the defendants' motion for summary judgment, however, they have made no argument as to these claims. As I noted in Renaudin, "an issue raised in the complaint but ignored at summary judgment may be deemed waived." Renaudin Order at 41 (quoting Grenier v. Cyanmid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995)). The plaintiffs' unjust enrichment claims are therefore dismissed and summary judgment granted to the defendants.

### E. Other Assertions

In addition to their four claims, the plaintiffs bring two additional issues to the Court's attention. First, they argue that they are entitled to interest on the funds withheld during the six month periods between stock purchases. I have already rejected this argument, Renaudin Order

at 42-43, and plaintiffs have not cited any Michigan or Nebraska authority that would suggest a different result. As I explained then, even if the funds had been held in an interest-bearing account, the plaintiffs would not have had the right to the interest under the clear terms of the CAP contract. Id. Summary judgment is granted to the defendant on this issue as well.

Second and lastly, the plaintiffs ask me to certify state law questions to Nebraska and Michigan courts. They do not, however, specify any questions that could be certified, and I have not identified any issues that would require determination by a state court. "When state law is sufficiently clear . . . to allow a federal court to predict its course, certification is both inappropriate and an unwarranted burden on the state court." Manchester Sch. Dist. v. Crisman, 306 F.3d 1, 14 (1st Cir. 2002). See also In re Citigroup, 535 F.3d at 62-63 (declining to certify questions to Florida and Georgia state courts). Accordingly, I decline to burden the state courts in this case.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment in the Michigan and Nebraska Cases (**document # 786**) is **GRANTED** in its entirety; plaintiffs Cross-Motion for Summary Judgment (**document #791**) is **DENIED** in its entirety.

**JUDGMENT** for the Defendants in the Michigan and Nebraska cases.[5]

**SO ORDERED.**

**Date: March 31, 2011**     /s/ Nancy Gertner
                             **NANCY GERTNER, U.S.D.C.**

---

[5] Citigroup's counterclaims are moot because they are conditioned on a judgment in favor of the plaintiffs. See Hundt v. Citigroup Global Markets, Inc., Answer at 6-7 (document #8 in D. Neb. 06-cv-03248); Barber v. Citigroup Global Markets Inc., Answer at 7-8 (document #680).